IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRIGNIA

*Norfolk Division*

UNITED STATES OF AMERICA

v.  Criminal No.: 2:20-CR-112-005

ERIK ECKERT,

        Defendant.

## **DEFENDANT'S POSITION ON SENTENCING**

Defendant, Erik Eckert, by and through counsel, Brian M. Latuga, Esq. in accordance with 18 U.S. C. § 3553(a) and USSG § 6A1.2, files this paper outlining Mr. Eckert's position with respect to sentencing. The Presentence Report (the "**PSR**")[1] has been reviewed and there is no objection to the advisory guidelines range of 0-6 months. Mr. Eckert respectfully submits that a sentence of time-served is reasonable considering the circumstances of this case, and accounts for each of the factors set forth in 18 U.S.C. § 3553. Mr. Eckert was detained in Federal custody from December 16, 2020 through January 15, 2021, and released on an unsecured bond prior to trial. On June 8, 2021, Mr. Eckert was placed back into Federal custody by this Court pursuant to 18 U.S.C. § 3143 and has since been incarcerated.

## **Disputes/Objections to the PSR**

In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the Defendant represents that he has reviewed the PSR, with counsel, and does not dispute any of the sentencing factors set forth therein, nor the guideline calculation of 0 (zero) to 6 (six) months.

---

[1] The Presentence Investigation Report filed on September 3, 2021 (Doc. No. 169).

One objection in the presentence report remains unresolved which is the use of the listed alias "Eckert, *Midget*." PSR p. 2. While seemingly insignificant, this applied nickname is nothing Mr. Eckert has ever heard or declared being called. Even during his military service, Mr. Eckert was never given this as a nickname, as military members so often apply. Any reference to his height as a nickname was made when he was a young child and not this name. Mr. Eckert respectfully requests this demeaning reference be omitted.

## **18 U.S.C. § 3553(a) – Factors to Consider at Sentencing**

In determining the appropriate sentence to impose, this Court must follow the guidance of the United States Supreme Court in *Gall vs. United States*, 552 US 38, 50 (2007):

> (The) district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. (Citation and footnote omitted).

"[E]vidence about [a] defendant's background and character is relevant" to the sentencing decision, "because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems,

may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *abrogated on other grounds* (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring)).

Analysis of the factors set forth in 18 USC §3553(a) support the result which this defendant seeks. This is the general directive for the Court to formulate a sentence which is sufficient to accomplish the purposes of sentencing, but no more than that. Accordingly, so long as this Court determines that Mr. Eckert's sentence is sufficient as to him, and his conduct, the sentence is appropriate for purposes of 18 U.S.C. § 3553(a).

1. **Nature and circumstances of the offense and the history and characteristics of the defendant.**

Mr. Eckert is a recently discharged decorated sailor of the U.S. Navy, charged as a co-defendant in a steroid manufacturing and distribution scheme. Mr. Eckert received and distributed steroids after being a steroid user himself and began selling steroids to other individuals with whom he was acquainted. Mr. Eckert was not involved in the manufacture of these steroids, nor was he aware of the scope of the Lambert scheme.

*Nature and Circumstances of the Offense*

Conspiracy to distribute steroids is unquestionably a serious offense. Mr. Eckert would be the first to state that. That said, given the nature and circumstances of this offense, a sentence of time-served with supervised release, which is within the advisory guideline range, is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. 3553(a). Mr. Eckert has significant family support, availability of medical care, and has shown great remorse for these enormous errors of judgement.

As reflected in his PSR, Mr. Eckert fully accepts responsibility and shows remorse for his crimes. Mr. Eckert recognizes and appreciates the seriousness and gravity of his conduct. Without diminishing that responsibility, the defendant is much less culpable than all his co-defendants. *See generally* PSR, ¶s 10, 13. Mr. Eckert never met and did not know personally any one of the co-conspirators. Eckert was not involved with receiving any packages to ship to M. Lambert, had never traveled to any manufacturing or distribution center, did not know any one existed, and had no knowledge of the breadth of the operation conducted by the co-conspirators. PSR ¶ 10. Eckert did order multiple packages of steroids online –through M. Lambert's alias, "Christopher DeCamillo." Further, Eckert's conduct enlarged over time from the use of these steroids to distribution of steroids to his friends.

Mr. Eckert was a user of anabolic steroids beginning in 2018. Initially his use was illicit, then in 2019 his use was supplemented by prescription. PSR ¶s 45, 47. He later experimented with Trenbolone once or twice; further he experimented with Human Growth Hormone (HGH) in late 2019 or early 2020, ending around December 2020. PSR ¶ 47. Among many other medications, Mr. Eckert was still receiving therapeutic levels of testosterone by prescription from his doctor prior to incarceration. PSR ¶ 45.

Mr. Eckert obtained steroids through the internet via Mr. Lambert. As many others using steroids, Eckert is a bodybuilder. He later distributed the steroids that he received from his online orders. As calculated by probation and the government, Mr. Eckert's offense involved approximately 3,631.175 units of Schedule III Steroid. PSR ¶ 19. This falls squarely within the Base Offense Level of 10, between 2,500, but less than 5,000 units.

Unlike many of the other co-defendants, Mr. Eckert was not living in the lap of luxury or falling jealous of fast cars, jewelry, horses, or houses. Instead, Mr. Eckert maintained a dignified career serving the United States and its Navy as a Culinary Specialist, VBSS[2] Boarding Officer, anti-terrorism team member, and damage control team member; he supports his wife and their son -who he hopes to adopt after he restarts his life as a civilian.

*History and Characteristics of the Defendant*

Mr. Eckert comes before this Honorable Court at 34 years of age. He was discharged from the United States Navy as an E-6 on June 18, 2021 Under Honorable Conditions – a general discharge for drug abuse/ misconduct. PSR ¶ 54. He served nearly seventeen (17) years of active duty, but mental health conditions caused him to begin separation. He is a decorated Sailor and has sacrificed years of service to this Country. PSR ¶ 55. Mr. Eckert suffers from Post-traumatic Stress Disorder (PTSD), Major Depressive Disorder , Attention-deficit/ Hyperactivity Disorder (ADHD), PSR ¶s 44, 45, as well as high blood pressure. PSR ¶ 43. All these conditions arose from military service.

Mr. Eckert became estranged from his mother when he was thirteen (13) years old. He arrived home one day to find her bags packed and her soon out the door. PSR ¶s 35, 36. The family struggled financially and while his needs were met, the electricity would occasionally turn off. Mr. Erik Eckert became his younger brother's caretaker until he joined the United States Navy at 18 years old. This is hardly the upbringing of a stable family situation, but Mr. Eckert was driven to succeed.

---

[2] Visit, Board, Search, and Seizure

Unfortunately, his first marriage ended similarly to his parent's. With Eckert estranged from his own children, allowed only to send child support money to his former spouse each month. Unfortunately, among other stressors, Mr. Eckert had been involved in a protracted visitation and child support dispute with his ex-wife over their two biological children, from whom he has been segregated. Eckert happily won visitation rights through mediation in Volusia County, Florida; but was shortly after jailed.

Eckert's military service did not keep him in the kitchen. He served on specialized Visit, Board, Search, and Seizure (VBSS) team. This team would board pirate ships and be exposed to incredible stress and mental anguish. Eckert further volunteered his services on the damage control and anti-terrorism teams as a team leader, primarily conducting training and response drills for subordinate members. All these assignments placed Mr. Eckert in compromising positions and exposed him to greater stress and risk to his own life than he was otherwise required to endure. Mr. Eckert's Post-Traumatic Stress Disorder Diagnosis (PTSD) and other mental health diagnoses originate from these assignments.

Further saddening, Eckert's his mental health declined to a state that drove him to attempt suicide in October 2020. Eckert was hospitalized and sought follow-up care. Mr. Eckert is grateful to have failed and that he has obtained the help he needed from his mental health providers and doctor. He completed the military's Substance Abuse Rehabilitation Program ("SARP") and stopped using Human Growth Hormone. His use of testosterone remained only through his medical doctor. PSR ¶ 47. It is obvious that Mr. Eckert is well on his road to recovery and taking these matters seriously.

Eckert is family man. He pleases the hearts of those around him. As evinced from the glowing character letter from his wife and his mother in-law, attached hereto as **EXHIBITS 1 and 2,** respectively. PSR ¶ 39.

Upon Eckert's arrest he was incarcerated for approximately 30 days before being released on an unsecured bond under GPS monitored house arrest. He endured several necessary physical moves due to changed military, family, and financial conditions. Mr. Eckert's pretrial home confinement alone seemed sufficient a punishment to instill in him a greater respect for the law and consequences of his actions.

Mr. Eckert has been incarcerated since his Plea Hearing June 8, 2021.[3] Eckert has undergone military deployments that have brought him away from those he loves. However, he has now endured a lengthy period of serious self-reflection and solitude that he swears never to again endure. He has lost many things with a felony conviction, has been without his family, wife, and son, and they have suffered without his income. His respect for society, health, safety, and the law are at a peak. Mr. Eckert has shown through his near 17 years of military service and accolades that he can abide by rules, regulations, and authority. Despite these terrible decisions, he maintains a sense of honor, courage, and commitment to what is right for himself and the community. The disappointment from his family, and his personal embarrassment are a constant motivation to be a better person and to thrive in society.

---

[3] Guilty Plea Felony Indictment Minutes, Doc. No. 128

2. **General purposes of sentencing - 18 USC §3553(a)(2)**

The remaining sentencing factors under 18 U.S.C. §3553(a)(2) address retribution, deterrence, incapacitation, and rehabilitation. *See Tapia v. United States*, 564 U.S. 319, 325 (2011).

A sentence of imprisonment between 0-6 months, and certainly no greater than time-served, is sufficient in this case to "reflect the seriousness of the offense" or "to promote respect for the law". There is no question that imprisonment is expected when someone traffics in the drug trade. In this case, the collateral consequences, including Mr. Eckert's loss of liberty, income, future job opportunities, and lost time with his family, have sent a message to Mr. Eckert and others who might learn of it - the law must be respected. Moreover, Eckert demonstrated early and complete acceptance of responsibly for his conduct affirming his respect for this Court and the laws of the United States.

Moreover, there is no evidence showing that recidivism is a concern. Mr. Eckert has no criminal history prior to these charges and maintained a long career in the United States Navy. His record of law-abiding behavior is long. There is no reason to believe that prison time is necessary to prevent Eckert from engaging in this conduct again.

Eckert is statistically the least likely to recidivate after a federal conviction. [4] Further, a 2017 study by the United States Sentencing Commission found that as to this Court's requirement to consider the *need* to "afford adequate deterrence to criminal conduct" in the imposition of a

---

[4] *The Past Predicts the Future: Criminal history and Recidivism of Federal Offenders*, United States Sentencing Commission, March 2017 (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf last accessed: September 20, 2021. Finding that those with zero criminal history points and having no prior contact with the criminal justice system had a rearrest rate of 25.7%; the lowest rearrest rate of any criminal history group studied.

sentence, the general deterrence is, empirically, not effective on society unless one is under the threat of criminal prosecution.

> The findings regarding general deterrence are relatively settled. The existing data show that in the absence of the threat of punishment for criminal conduct, the social fabric of society would readily dissipate; crime would escalate and overwhelmingly frustrate the capacity of people to lead happy and fulfilled lives. Thus, general deterrence works in the absolute sense: there is *a connection* between criminal sanctions and criminal conduct. However, there is insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate.… It is counter-intuitive to suggest that higher penalties will not reduce the crime rate. However, the evidence is relatively definitive.

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted). In fact, "studies repeatedly show that awareness of potentially severe sanctions does not produce less crime." *Id.* at 1203.

> Thus, deterrence properly informs sentencing only to the extent that it requires a hardship to be imposed for criminal offending. It does not require a particularly burdensome penalty, merely one that people would seek to avoid. That aim could be satisfied by a fine or a short prison term. There is no foundation for increasing penalties to reduce the crime rate.

*Id.*, at 1205; *see also* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013) (reviewing recent literature and concluding that "evidence in support of the deterrent effect of various measures of the certainty of punishment is far more convincing and consistent than for the severity of punishment.").

According to these professionals, no data suggests a reason to impose a sentence of considerable length simply to deter society at large. Because U.S.C. § 3553 requires the sentence be sufficient, but not *greater than necessary* to conform with the sentencing factors, a time-served sentence serves adequate deterrence.

Mr. Eckert is discharged from the United States Navy and has accumulated a significant amount of training that should give this Court no pause in his ability to succeed in society without intervention. Aside from being a High School graduate and having attended some college for business and management, he is focused on further education. Eckert plans to pursue an education as a Master Electrician. He was trained in the Navy as an Electrician and Culinary Specialist. He earned certificates in Hotel Management, Basic Food Production, and Safety Awareness. PSR ¶s 50, 51. Eckert's certificates and awards are mere memorizations of his education and background, attached hereto as **EXHIBITS 3 and 4**. Additionally, he has a strong social and family support system to coincide with his further pursuit of education and marketable skills. He has had time now to deeply consider his future and educational path.

Mr. Eckert is a disabled military veteran who will be applying for disability benefits from the VA to help care for his multiple mental health diagnoses. Healthcare and continued treatment is available to Mr. Eckert upon release and will immediately be sought for continuity of care.

The court should place significant positive stock in Mr. Eckert's military service, leadership positions, educational pursuits, and most certainly his remorse. It is not lost on Eckert that he is formally and permanently being demoted from US Navy Sailor to US Federal Felon. He is embarrassed for himself and for his representation of his country. He is not a career criminal and knows certain he never will be. He misses his family dearly, looks forward to his educational

and employment future, and is in a better place mentally and physically to handle the stressors and joys that will follow upon his release.

3. **Kinds of sentences available – 18 USC § 3553(a)(3):**

Because the Defendant falls under "Zone A" a term of probation is authorized, and does not require a term of community confinement, home detention, or intermittent confinement. U.S.S.G. §5B1.1. And because Mr. Eckert falls in Zone A, a sentence of imprisonment is not required. U.S.S.G. §5C1.1(b). Mr. Eckert must be sentenced to at least 1, but not more than 5 years of probation. U.S.S.G. §5B1.2.

The Defendant's ability to pay any fine is virtually non-existent. While Mr. Eckert has marketable skills, he is now a federal felon and will be faced with the reality of that stigma and embarrassment to follow him. Jobs will be harder to obtain. He has a large amount of debt and pays monthly child support to his former spouse for his two children. PSR ¶s 56, 40. Accordingly, the Court is permitted to impose no fine "where the defendant establishes that [he] is unable to pay and is not likely to become able to pay any fine." (U.S.S.G. § 5E1.2(a)). "The determination of the fine guideline range may be dispensed with entirely upon a court determination of present and future inability to pay any fine." (U.S.S.G. § 5E1.2 (Commentary, 3)). Accordingly, it would be appropriate in this case to waive any fine.

4. **Relevant Guidelines – 18 USC § 3553(a)(4)**

Eckert acknowledges that the Probation Officer has accurately and correctly calculated the guideline range.

5. **Relevant policy statements. 18 USC §3553(a)(5)**

None known to the Defendant

6. **Need to avoid unwarranted sentencing disparities. 18 USC §3553(a)(6)**

Accordingly, Mr. Eckert is most akin to an independent outsider of the Lambert scheme. Many of Mr. Eckert's co-defendants are currently being sentenced before this court. PSR ¶s 5-9.

   a) *United States v. Hamdy Sayed (0422 2:20 CR00112-006)*

      a. Sentenced to three (3) months of imprisonment and three (3) years of supervised release.[5]

      b. Integrally intertwined with M. Lambert, distributed for and at the direction of M. Lambert, and participated in the purchase of vehicles and keeping of profits by and with M. Lambert.[6]

It is also important that this Court consider cases outside this district as well. It is enlightening to see the various sentenced imposed for the cases cited in M. Lambert's Position with Respect to Sentencing.[7] Doc. No. 147. Defendant Michael Schlanger possessed 40,000 or more units of steroids and received a time-served sentence of three (3) days. Clayton Moore possessed 40,000 units of steroids and received three (3) years probation, a variant sentence from 24-30 month guidelines. Cole Leggett possessed 10,000-20,000 units of steroids and received two (2) years probation under 6-12 month guidelines. Without knowing more about each defendant, it is hard to imagine that Mr. Eckert does not have a far more impressive and mitigating background or history.

7. **Restitution. 18 USC §3553(a)(7)**

Not Applicable.

---

[5] Doc. No. 187
[6] Doc. No. 110
[7] *United States v. Lambert*, Position on Sentencing. Doc. No. 147, pp. 13-17

## Conclusion

This Court is respectfully urged to impose a sentence of time-served with a term of supervised release. Under these circumstances, it is unnecessary to impose a sentence that is greater than what is requested. Mr. Eckert hopes to immediately continue to be the responsible member of society he had been for years prior to his diversion into illicit steroid use and criminal activity.

Respectfully submitted this 28th day of September, 2021,

ERIK ECKERT

BY: _____/s/_____
Brian M. Latuga, Esquire
VSB #86300
WOLCOTT RIVERS GATES
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Telephone: 757.497.6633
Facsimile: 757.497.7267
E-mail: blatuga@wolriv.com
*Counsel for Defendant Erik Eckert*

CERTIFICATE OF SERVICE

   I hereby certify that on the 28th day of September, 2021, I electronically filed the foregoing Defendant's Position on Sentencing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Kristin G. Bird, Esquire
United States Attorney's Office
8000 World Trade Center
101 West Main Street
Norfolk, VA 23510
*Counsel for the United States of America*

With courtesy copy by email to:

Latriston Cox
U.S. Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510

             /s/
            Brian M. Latuga, Esquire
            VSB #86300
            WOLCOTT RIVERS GATES
            200 Bendix Road, Suite 300
            Virginia Beach, VA 23452
            Telephone: 757.497.6633
            Facsimile: 757.497.7267
            E-mail: blatuga@wolriv.com
            *Counsel for Defendant Erik Eckert*